JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3552 | **DATE** | 8/9/2000 |
| **CASE TITLE** | USA ex rel. Erdogan Kurap vs. Warden Roger Cowan, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Order. Because it is clear "that an evidentiary hearing is not required" to resolve the issues posed by the Petition, that same Rule 8 calls on this Court to "make such disposition of the petition as justice shall require." That appropriate disposition is the dismissal of the Petition, and this Court so orders. This dismissal moots Kurap's motion for production of documents. (11-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 10 2000 date docketed | 16 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | IS docketing deputy initials | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING 00 AUG -9 PM 2: 27 | | |
| | Copy to judge/magistrate judge. | | 8/9/2000 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



UNITED STATES OF AMERICA ex rel. )
ERDOGAN KURAP #B-42516, )
 )
            Petitioner, )
 )
v. ) No. 00 C 3552
 )
WARDEN ROGER COWAN, et al., )
 )
           Respondents. )

MEMORANDUM ORDER

In response to this Court's June 16, 2000 memorandum order ("Order"), respondent Warden Roger Cowan timely filed his Answer and accompanying Exhibits to the self-prepared Petition for Writ of Habeas Corpus ("Petition") that had been brought by Erdogan Kurap ("Kurap"). Now Kurap has in turn filed his Response to Respondent's Answer ("Response"), clearing up one issue questioned by the Order and addressed by the Answer. But in doing so Kurap has disclosed a different (and fatal) flaw in his current Petition.

It turns out that Kurap is simultaneously pursuing two challenges to his current custodial status as impacted by a June 7, 1979 extradition treaty between Turkey and the United States ("Treaty"). In one of those challenges he has wended his way from the Circuit Court of Cook County through the Illinois Appellate Court for the First District (in its Case No. 99-1746) and, having failed in both of those courts, he now has a notice of appeal pending before the Illinois Supreme Court. Hence the claims asserted there have not been exhausted in the state system as



required by 28 U.S.C. §2254(b)(1)[1] as a precondition to the grant of federal habeas relief.

Kurap's current Petition advances a somewhat different claim of Treaty violation that he has earlier tendered to the Illinois Supreme Court via a separate original motion for leave to file a state habeas petition. On February 1, 2000 the Illinois Supreme Court denied that motion via a one-sentence order in its Case No. 10033. That claim, then, has indeed been exhausted at the highest level of the state judicial system.

But simply having satisfied the Section 2254(b)(1) precondition of exhausting state remedies does not advance Kurap toward his goal of obtaining habeas relief in the federal system. As his Response makes plain on that score, Kurap's present contention is that the admittedly discretionary nature of the Treaty was rendered binding by the Illinois Department of Corrections' initial approval of his transfer to Turkey for the service of his long-term criminal sentence there rather than here, so that the Department's later withdrawal of its approval in March 1998 was legally ineffective. When that claim is examined under the Section 2254 microscope, however, it too fails to achieve his purpose.

Kurap's fundamental problem in that regard is that the Treaty understandably leaves the manner of "approval of an authority other

---

[1] All further references to Title 28's provisions will simply take the form "Section--."

2

than the central government authority of that party [the United States]"--in this case, approval by Illinois--to the internal law of that other authority whose approval is required. And in this instance 730 ILCS 5/3-2-3.1 specifies (emphasis added):

> If a treaty in effect between the United States and a foreign country provides for the transfer or exchange of convicted offenders to the country of which they are citizens or nationals, <u>the Governor may</u>, on behalf of the State and subject to the terms of the treaty, <u>authorize the Director of Corrections to consent to the transfer</u> or exchange <u>of offenders</u> and take any other action necessary to initiate the participation of this State in the treaty.

On that score the Answer asserts that Illinois' Governor did not himself authorize the Illinois Director of Corrections to consent to Kurap's transfer. Respondent Warden Cowan's position seems to be that it is entirely irrelevant that the Department of Corrections may have waffled on the subject, because under the literal language of the quoted statute the final decision is vested in the state's chief executive. If that is indeed the effect of the statutory requirement, Kurap would lose on the merits. But because an informed evaluation of that position would require further factual (and perhaps legal) examination, this opinion turns instead to the defect that Kurap cannot overcome.

At its core the argument that Kurap is now advancing is a kind of contract claim--a contention that once the several required governmental consents required by the Treaty (including Illinois' approval conveyed through its Director of Corrections) had been

given, a contract resulted of which Kurap was effectively a third party beneficiary. But if Kurap's efforts to convert the Treaty provisions into such a contractual arrangement were to be accepted,[2] he would still have to establish that Illinois' later withdrawal from that arrangement was not just a breach of contract but rather amounted to a violation of Kurap's <u>constitutional</u> rights.[3] It must always be remembered that Section 2254 is a limited remedy, available to correct violations of a state prisoner's federal constitutional rights--not any rights of lesser stature.

But in that regard it must also be remembered that the large majority of American jurisdictions adhere to the principle that contracting parties are free to modify their arrangements, without any right to object on the part of a third party beneficiary, unless and until the latter (1) has materially changed position in justifiable reliance on the promise or (2) has brought suit on the promise or (3) has manifested assent to the promise at the request

---

[2] Kurap offers no authority for the notion that the existence of the Treaty plus its implementation by actions of the three relevant governmental authorities (Turkey, the United States and Illinois)--even assuming that such implementation took place--created an enforceable legal right on the part of a prisoner such as Kurap. Despite that lack of a legal showing, the further discussion in this opinion will also assume arguendo an affirmative answer to that question, for it will be seen that Kurap loses anyway.

[3] Under the Fourteenth Amendment's Due Process Clause or the Contracts Clause (Art. I, §10) or what? That too is wholly unclear.

4

of the promisor or promisee (see, e.g., <u>Olson v. Etheridge</u>, 177 Ill.2d 396, 408-12, 686 N.E.2d 563, 568-70 (1997), adopting the majority view embodied in the Restatement (Second) of Contracts §311 (1981)). In this instance Illinois' change of heart as to its joinder in the three-cornered arrangement, a change that was effectively accepted by the other two governments, represented just such a modification--and that modification unquestionably preceded any action by Kurap that met any of the stated exceptions identified in the Restatement.

It should be emphasized that for present purposes this Court need not choose between that heavy majority view and the minority view followed by a handful of states. Instead, with the Illinois Supreme Court having rejected Kurap's effort to obtain original habeas relief from that court, and with no indication that such rejection was predicated on technical procedural grounds, under established law this Court is justified in viewing that disposition as a denial of relief on the merits. As recently reconfirmed by our Court of Appeals in <u>Jefferson v. Welborn</u>, No. 99-2337, 2000 WL 862846, at *2 (7th Cir. June 29):

> [I]f the last word from the state supreme court does not reveal whether a procedural bar or a substantive lack of merit motivated its ruling, we will presume it is the latter for purposes of §2244(d), unless "the last reasoned opinion on the claim explicitly impose[d] a procedural default," which the denial of review by the state supreme court does not disturb. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

All of that being so, Kurap's effort to obtain federal habeas

5

relief is blocked directly by the provision of Section 2254(d)(1) that limits such relief to a state court determination that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" (see the exposition of that provision in <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1519-21 (2000)). It is after all a gross understatement to label the Illinois Supreme Court's rejection of Kurap's imaginative (perhaps even ingenious) argument, which hinges on not just one but a whole series of unproved propositions, as "contrary to...clearly established federal law, as determined by the Supreme Court of the United States."

Because it is thus clear "that an evidentiary hearing is not required" (the language of Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts) to resolve the issues posed by the Petition, that same Rule 8 calls on this Court to "make such disposition of the petition as justice shall require." That appropriate disposition is the dismissal of the Petition, and this Court so orders.[4]

                                                _____
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: August 9, 2000

---

[4] This dismissal moots Kurap's Motion Requesting Production of Documents, filed contemporaneously with his Response, and that Motion is therefore denied on mootness grounds.